211 P.3d 1261 (2009)
In re MH XXXX-XXXXXX.
No. 1 CA-MH 08-0012.
Court of Appeals of Arizona, Division 1, Department D.
April 21, 2009.
*1262 James J. Haas, Maricopa County Public Defender By Tennie B. Martin, Deputy Public Defender, Phoenix, Attorneys for Appellant.
Andrew P. Thomas, Maricopa County Attorney By Anne C. Longo, Deputy County Attorney And Geraldine L. Roll, Deputy County Attorney, Phoenix, Attorneys for Appellee.

*1263 OPINION
SWANN, Judge.
¶ 1 This case requires us to evaluate the interplay between Arizona's civil commitment statutes and its criminal statute governing incompetent defendants. We conclude that A.R.S. § 13-4517(1) provides an effective alternative to the petition for evaluation prescribed by A.R.S. § 36-523, and hold that an order entered in a criminal case pursuant to § 13-4517 requiring an individual to undergo mental health treatment obviates the need for strict compliance with the preliminary civil evaluation procedure set forth in § 36-523.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 Appellant, J.T., appeals the superior court's order that he undergo a combination of inpatient and outpatient treatment in a mental health treatment facility. Appellant argues that because no Petition for Evaluation was ever filed as a predicate to that order, the superior court lacked jurisdiction and he was denied due process. The State contends that Appellant's argument is without merit because (1) the issue raised on appeal is moot; (2) the trial court had subject matter jurisdiction; and (3) Appellant was not denied due process.
¶ 3 On January 30, 2006, Appellant was arrested for aggravated assault and booked into the Fourth Avenue Jail in Phoenix, Arizona. After his arrest, the criminal court ordered an evaluation of his competency pursuant to Ariz. R.Crim. P. 11. The evidence showed that Appellant was not competent to stand trial, but that with treatment his competency could be restored. See A.R.S. § 13-4510(C). The Rule 11 court ordered Appellant to a Restoration to Competency Program ("RTC"). In December 2006, after Appellant completed the RTC, an examining psychologist opined that Appellant was competent to stand trial.
¶ 4 However, on January 3, 2008, Appellant and the State stipulated to the admission of the results of a second Rule 11 competency evaluation, and the Rule 11 court found that Appellant was not competent to stand trial. Pursuant to Arizona Revised Statutes ("A.R.S.") § 13-4517 (2001), the court found that there was "no substantial probability that Defendant [would] be restored to competency within 21 months after the date of the original finding of incompetency."[1] The court also made the following findings:
THE COURT FURTHER FINDS that there is reasonable cause to believe that Defendant is a danger to self, a danger to others, persistently or acutely disabled, or gravely disabled as a result of a disorder pursuant to A.R.S. § 36-501, et. seq.;
THE COURT FURTHER FINDS that the Defendant is not willing and is not capable of voluntarily consenting to admission to a mental health treatment agency for the evaluation, care or treatment of his/her [sic] mental condition; and
THE COURT FURTHER FINDS that the Defendant is likely, without immediate or continued hospitalization, to suffer serious physical harm or serious illness, or to inflict serious physical harm on another person prior to evaluation and further hearing.
¶ 5 After making these findings, the court ordered the following:
IT IS ORDERED that the Defendant shall be immediately taken into custody by the Sheriff and shall be immediately transported to Desert Vista Behavioral Health Center for inpatient evaluation pursuant to A.R.S. § 36-530;
. . . .
IT IS FURTHER ORDERED appointing the Deputy Public Defender assigned to mental health proceedings as co-counsel during all civil mental health proceedings;
IT IS FURTHER ORDERED that the County Attorney is to file a Petition for Court-Ordered Evaluation with the Clerk of the Court, pursuant to A.R.S. § 36-521(F), by 5:00 p.m. on 01/04/08 and provide a copy of the filed Petition to this division. The division staff is directed to review the file to determine compliance within 48 hours of the Petition's file date.

*1264 IT IS FURTHER ORDERED that counsel for the State in this cause furnish to the Probate Registrar copies of all police reports concerning the charges in this cause by 5:00 p.m. 01/7/08. The copies will be sent to the evaluation agency to aid in the evaluation and treatment of the Defendant;
IT IS FURTHER ORDERED that all medical records currently in the possession of Correctional Health Services shall be promptly delivered to the Desert Vista Behavioral Health Center; and
IT IS FURTHER ORDERED dismissing without prejudice the criminal charges in this matter effective at 5:00 p.m. on 01/04/08.

¶ 6 The State filed an "Application for Involuntary Evaluation" on January 4, 2008, which was served on Appellant on January 17, 2008. With its Application, the State supplied copies of the police report and written reports of six doctors who examined Appellant for his Rule 11 evaluations. The State never filed any document styled "Petition for Court-Ordered Evaluation."
¶ 7 On January 17, 2008, a treatment team at Desert Vista Behavioral Health Center ("Desert Vista") evaluated Appellant pursuant to the January 3, 2008 court order.
¶ 8 On January 23, 2008, pursuant to A.R.S. § 36-533 (2003), the Desert Vista treatment team filed a Petition for Court-Ordered Treatment. The team recommended that Appellant continue to receive hospital care and treatment, and asserted that without such treatment, Appellant would remain persistently and acutely disabled.
¶ 9 On January 23, 2008, the probate court issued a Detention Order for Treatment and Notice pursuant to A.R.S. § 36-535. The court held a hearing on the Petition for Court-Ordered Treatment on January 29, 2008, and Appellant was represented by counsel during the proceedings. Pursuant to A.R.S. § 36-540, the court issued an order for Appellant to undergo treatment for a period not to exceed 365 days, with a period of inpatient treatment not to exceed 180 days.
¶ 10 Appellant timely appeals, and we have jurisdiction pursuant to A.R.S. § 36-546.01 and § 12-2101(B) (2003).[2]

ANALYSIS

I. Waiver
¶ 11 The State correctly notes that Appellant failed to object to the process by which he was ordered to undergo treatment. However, "[a] constitutional issue may be raised and addressed for the first time on appeal, particularly when, as here, the issue is of statewide importance, is raised in the context of a fully developed record, does not turn on resolution of disputed facts, and has been fully briefed by the parties." Larsen v. Nissan Motor Corp., 194 Ariz. 142, 147, ¶ 12, 978 P.2d 119, 124 (App.1998) (citing Jimenez v. Sears, Roebuck & Co., 183 Ariz. 399, 904 P.2d 861 (1995); Gosewisch v. Am. Honda Motor Co., 153 Ariz. 400, 737 P.2d 376 (1987); Cutter Aviation, Inc. v. Ariz. Dep't of Revenue, 191 Ariz. 485, 958 P.2d 1 (App.1997)).
¶ 12 "An involuntary commitment hearing is a civil proceeding that can result in `a serious deprivation of liberty.'" In re Jesse M., 217 Ariz. 74, 76, ¶ 9, 170 P.3d 683, 685 (App.2007) (quoting In re MH XXXX-XXXXXX, 214 Ariz. 246, 248, ¶ 10, 150 P.3d 1267, 1269 (App.2007)). "As a result, the proposed patient must be afforded due process protection." Id. (citing In re Maricopa County No. MH-90-00566, 173 Ariz. 177, 182, 840 P.2d 1042, 1047 (App.1992)). Appellant's right to due process required that the statutes pertaining to court-ordered treatment be strictly followed. In re MH XXXX-XXXXXX, 218 Ariz. 538, 539, ¶ 6, 189 P.3d 1111, 1112 (App.2008). Because this is an issue of statewide importance that does not require the resolution of disputed facts, we conclude that the issue is properly before us.

II. Mootness
¶ 13 The State also argues that we should not consider this appeal because the *1265 terms of the court order expired on January 27, 2009, and it therefore became moot during the appellate process. "A case is moot when it seeks to determine an abstract question which does not arise upon existing facts or rights." Contempo-Tempe Mobile Home Owners Ass'n v. Steinert, 144 Ariz. 227, 229, 696 P.2d 1376, 1378 (App.1985) (citing Freeman v. Wintroath Pumps-Div. of Worthington Corp., 13 Ariz.App. 182, 475 P.2d 274 (1970); J.R. Francis Constr. Co. v. Pima County, 1 Ariz.App. 429, 403 P.2d 934 (1965)). However, we will consider moot cases when the issue presented is of statewide importance, and is capable of repetition but would otherwise evade review. In re Coconino County No. MH 1425, 181 Ariz. 290, 292, 889 P.2d 1088, 1090 (1995); In re MH XXXX-XXXXXX, 213 Ariz. 442, 443, ¶ 7, 142 P.3d 1255, 1256 (App.2006); In re Maricopa County No. MH 94-00592, 182 Ariz. 440, 443, 897 P.2d 742, 745 (App.1995). Because this appeal raises such an issue, we consider it on its merits.

III. Statutory Violations
¶ 14 Appellant argues that because there was no Petition for Evaluation filed, the court acted without proper authority when it ordered him to undergo an involuntary evaluation and subsequent treatment. For the reasons that follow, we disagree.

A. Interplay Between Title 13 and Title 36

¶ 15 The issue presented here is one of statutory interpretation. "In interpreting statutes, our central goal `is to determine and give effect to the legislature's intent.'" Yarbrough v. Montoya-Paez, 214 Ariz. 1, 5, ¶ 12, 147 P.3d 755, 759 (App.2006) (quoting Washburn v. Pima County, 206 Ariz. 571, 575, ¶ 9, 81 P.3d 1030, 1034 (App.2003)). "To determine legislative intent, we look first to the language the legislature has used as providing `the most reliable evidence of its intent.'" Id. (quoting Walker v. City of Scottsdale, 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App. 1989)). Here, our task is to harmonize the provisions of the civil commitment statutes and those of a related criminal statute, A.R.S. § 13-4517.
¶ 16 The statutory mental health scheme set forth in title 36, chapter 5, article 4, provides a series of procedural safeguards to ensure that court-ordered mental health evaluations are not conducted indiscriminately. The purpose of these safeguards is to identify correctly those individuals who are at risk, "as a result of a mental disorder," of being "a danger to self or others, persistently or acutely disabled or gravely disabled" and to avoid improper deprivation of an individual's liberty interests. A.R.S. § 36-520(B)(4).
¶ 17 In the civil context, A.R.S. §§ 36-520, -521 and -523 work together to require first that an applicant allege that an individual suffers from a mental disorder and is a danger to self, others or is acutely or gravely disabled. Upon receipt of such an Application for Evaluation, the receiving agency is required to complete a prescreening of the individual and compose a report. If the prescreening results determine one is necessary, a petition must then be submitted to a court requesting an order for involuntary evaluation.
¶ 18 If, however, an individual is arrested, subjected to Rule 11 evaluation, and determined incompetent to stand trial, the process for civil commitment can take a different course. When an individual has been found both incompetent to stand trial and non-restorable, A.R.S. § 13-4517(1) gives the court the authority to "[r]emand the defendant to the custody of the department of health services for the institution of civil commitment proceedings pursuant to title 36, chapter 5." See generally Nowell v. Rees, 219 Ariz. 399, 199 P.3d 654 (App.2008). In effect, A.R.S. § 13-4517 serves as a conduit between the criminal statutory scheme and the civil mental health statutes contained in title 36, chapter 5. But A.R.S. § 13-4517 does not address the significance of the criminal court order within the civil commitment scheme, nor does it identify the precise procedures required to achieve civil commitment when an individual enters the system by means of such an order in a criminal case.
¶ 19 Appellant correctly notes that a court-ordered involuntary evaluation that is not based on a formal petition for evaluation from a screening agency is generally invalid. *1266 See A.R.S. § 36-529(B). But, when, as here, the court first acts pursuant to A.R.S. § 13-4517(1), rather than A.R.S. § 36-501, et seq., the court's authority to act is not predicated on its review of a petition for evaluation. Here, the Rule 11 court considered a stipulated evidentiary record and found Appellant both incompetent to stand trial and not restorable. On January 3, 2008, the Rule 11 court acted within the discretion conferred by statute when it remanded Appellant to Desert Vista for the "institution of civil commitment proceedings." A.R.S. § 13-4517(1).

B. Appellant Received the Statutory Protections To Which He Was Entitled.

¶ 20 On January 4, 2008, the State filed with the court a packet of documents that comprised the functional equivalent of a petition for court-ordered evaluation.[3] Although the State's filing was styled "Application for Involuntary Evaluation," not "Petition for Involuntary Evaluation," the substance of the "application" supplied by the State contained essentially the same information that A.R.S. § 36-523 would require of a petition from a screening agency. The State supplied the requisite biographical information regarding the proposed patient, and alleged that there was reasonable cause to believe such person was a(1) danger to self; (2) danger to others; (3) gravely disabled; or (4) persistently or acutely disabled. The State also attached copies of police reports, as well as the reports of the doctors' examinations that were conducted for the Rule 11 competency evaluations and stipulated into evidence.
¶ 21 The primary purpose of the Petition for Evaluation and the Application for Evaluation is to ensure that a screening agency makes an informed decision as to whether the proposed patient is in "such a condition that without immediate or continuing hospitalization he is likely to suffer serious physical harm or further deterioration or inflict serious physical harm upon another person," and whether the evaluation should take place on an outpatient basis. A.R.S. § 36-523(B)(1), (2). Here, the Rule 11 court, rather than the screening agency, found (based on the written reports of the six doctors who evaluated Appellant pursuant to Rule 11) that Appellant was "likely, without immediate or continued hospitalization[ ] to suffer serious physical harm or serious illness, or to inflict serious physical harm on another person prior to evaluation and further hearing." Further, the court found that Appellant's evaluation should take place on an in-patient basis at Desert Vista. Pursuant to A.R.S. § 13-4517(1), Appellant was properly ordered to be admitted to Desert Vista for evaluation.
¶ 22 We conclude that no further judicial review was required before an evaluation of appellant commenced. To conclude otherwise, and invalidate these proceedings on the ground that the commitment was not initiated in the manner required by A.R.S. §§ 36-520 and -523, would be to treat A.R.S. § 13-4517(1) as surplusage.

IV. Subject Matter Jurisdiction
¶ 23 Appellant also argues that the court did not have subject matter jurisdiction because the Rule 11 court exceeded its scope of authority when it ordered him to undergo an involuntary evaluation and subsequent treatment. We disagree.
¶ 24 The Arizona Constitution grants the superior court original jurisdiction in cases and proceedings in which exclusive jurisdiction is not vested by law in another court. Ariz. Const. art. 6, § 14(1). Although the superior court in Maricopa County is organized into various departments, including probate, civil and criminal, "these departments are in-house administrative mechanisms that do not affect the jurisdiction of the superior court." Marvin Johnson, P.C. v. Myers, 184 Ariz. 98, 102, 907 P.2d 67, 71 (1995).
¶ 25 The superior court acquired subject matter jurisdiction when Appellant was charged with aggravated assault. As a matter of administrative policy, the commitment proceedings were transferred from the Criminal Department to the Probate/Mental Health Department. Both departments are *1267 vested with original jurisdiction, as they are merely administrative divisions of the superior court.

CONCLUSION
¶ 26 For the foregoing reasons, we conclude the superior court complied with the statutory scheme governing commitment of criminal defendants and that it acted within its jurisdiction when it entered the order that Appellant undergo involuntary, court-ordered evaluation and treatment, and therefore affirm.
CONCURRING: PATRICIA A. OROZCO, Presiding Judge and PATRICK IRVINE, Judge.
NOTES
[1] Appellant was present and represented by counsel during these proceedings.
[2] After filing the notice of appeal, appellant sought and obtained extensions of time for the filing of his opening brief and to permit the superior court to settle the record on appeal. This appeal was fully briefed on February 6, 2009.
[3] This same packet was submitted by the county attorney to the Maricopa County Correctional Health Services, Psychiatry Section, Screening Agency.